Argued and submitted January 28, reversed and remanded March 2, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KENNETH DEWAYNE BROWN,
*Defendant-Appellant.*

Klamath County Circuit Court
0602235CR; A141206

250 P3d 386

Laura A. Frikert, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Matthew J. Lysne, Assistant Attorney General, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, and David B. Thompson, Interim Solicitor General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals a judgment of conviction for two counts of first-degree sexual abuse, ORS 163.427, and one count of second-degree unlawful sexual penetration, ORS 163.408. On appeal, defendant contends that, under *State v. Southard*, 347 Or 127, 218 P3d 104 (2009), the trial court erred in admitting, over defendant's objection, a physician's expert diagnosis, in the absence of diagnostic physical findings, that the victim had been sexually abused. The state does not dispute that *Southard* controls and that the trial court erred in admitting the diagnosis of sexual abuse. Instead, the state contends that the court's error was harmless. As explained below, we cannot say that, notwithstanding the erroneously admitted diagnosis, there was "little likelihood" that the evidence affected the jury's verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Accordingly, we reverse and remand.

The material circumstances for purposes of our review are not controverted. Defendant was charged with two counts of first-degree sexual abuse, ORS 163.427, and one count of second-degree unlawful sexual penetration, ORS 163.408. As pertinent here, ORS 163.427(1) provides that a person commits first-degree sexual abuse if, among other things, the person "[s]ubjects another person to sexual contact." ORS 163.408 provides, in pertinent part, that a person commits second-degree unlawful sexual penetration "if the person penetrates the vagina * * * of another with any object other than the penis or mouth of the actor * * *."

At trial, defendant's position was that he was not guilty of the charged conduct, but that, if he was, he was guilty but insane under ORS 161.295. Defendant did not admit that the alleged conduct occurred; rather, he testified that he did not remember engaging in that conduct. Alternatively, defendant took the position that he suffered from dissociative identity disorder and that, if the alleged conduct occurred, his other personality, "Josh," was responsible for it. Specifically, the following exchange took place at trial:

"[Defense Counsel:] * * * So you don't remember whether you did this to [the victim] or not?

"[DEFENDANT:] No.

"[Defense Counsel:] Correct? Okay.

"[DEFENDANT:] I don't remember.

"* * * * *

"[Defense Counsel:] * * * And if it happened, did you do it?

"[DEFENDANT:] No.

"[Defense Counsel:] Who did it?

"[DEFENDANT:] Josh."

The state offered the testimony of several witnesses to prove that defendant engaged in the conduct constituting sexual abuse and unlawful sexual penetration. In addition to the testimony of the victim and her mother, the state introduced the testimony of Dr. Janey Purvis, a physician with specialized training in child abuse and neglect. Purvis testified, over defendant's objection, to her diagnosis that "it was highly likely that [the victim] had experienced sexual abuse."

The jury convicted defendant of all three charges. He appeals.

As previously indicated, on appeal, the state does not dispute that, under *Southard*, the trial court erred in admitting Purvis's diagnosis of sexual abuse. Instead, relying primarily on our decision in *State v. Sanchez-Alfonso*, 238 Or App 160, 241 P3d 1194 (2010), the state contends that the error was harmless:

"Given that defendant did not seriously contest that the abuse occurred (he asserted only that he did not remember whether he had abused [the victim] and that, if the abuse in fact occurred, his alternate personality was responsible), there is little likelihood Dr. Purvis's sexual-abuse diagnosis affected the verdict. At bottom, this case turned on whether the jury would accept defendant's guilty-but-insane defense. Whether the abuse occurred was, for all practical purposes, not in dispute. At trial, [the victim] gave detailed testimony about the abuse and her mother testified that defendant—purportedly speaking to her through his other personality, Josh—had admitted to it. Defendant did not seriously challenge the credibility of their testimony.

Against that backdrop, admission of the sexual-abuse diagnosis was harmless error. That evidence was not relevant to, and thus could not have affected, the jury's assessment of defendant's guilty-but-insane defense. The challenged evidence went only to whether defendant had committed the alleged criminal acts (effectively undisputed), not to his mental state—the question presented by his guilty-but-insane defense."

For the reasons explained below, we disagree with the state that the error was harmless.

The Supreme Court's decision in *Davis* frames the proper inquiry. In *Davis*, the Supreme Court determined that, under Article VII (Amended), section 3, of the Oregon Constitution,[1]

"Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict? The correct focus of the inquiry regarding affirmance despite error is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a fact-finder, would regard the evidence of guilt as substantial and compelling."

336 Or at 32. Further, in *Davis*,

"[t]he Supreme Court further explained that a variety of considerations may properly inform that 'single inquiry,' including 'the nature of the error that occurred below,' *id.*, and the 'context of the legal error.' *Id.* at 33. The court noted, for example, that the erroneous exclusion or admission of evidence would be harmless 'if the particular issue to which the error pertains has no relationship to the jury's determination of its verdict,' *id.* at 32, or if the jury 'would have regarded the * * * evidence as duplicative or unhelpful to its deliberations.' *Id.* at 33. Ultimately, the Supreme Court in *Davis* concluded that the erroneous exclusion was not harmless, because it could not 'say that the excluded statements were merely cumulative of' admitted evidence—and, indeed, 'were qualitatively different than the

---

[1] Article VII (Amended), section 3, provides, in part:

"If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial[.]"

evidence that the jury heard'—and because 'the excluded evidence goes directly to the heart of defendant's factual theory of the case.' *Id.* at 34."

*State v. Perkins*, 221 Or App 136, 143, 188 P3d 482 (2008) (quoting *Davis*, 336 Or at 32-34) (omission in *Perkins*).

Here, the state seeks to cast Purvis's diagnosis as pertaining to an "effectively undisputed" issue—*viz.*, whether defendant had committed the alleged criminal acts. As previously indicated—and as is inherent in the state's own characterization—that issue was not undisputed. Defendant did not admit that he engaged in the alleged criminal conduct. Although the state is correct that defendant raised a guilty but insane defense in this case, the state was not relieved of its burden to prove the elements of the crime beyond a reasonable doubt. For that reason, Purvis's diagnosis of sexual abuse went "directly to the heart of [the state's] factual theory of the case." *Davis*, 336 Or at 34.

Our decision in *Sanchez-Alfonso* is not to the contrary. In that case, we held that, even if "an expert witness's diagnosis of physical child abuse at the hands of a particular actor—[the] defendant—is [not] admissible scientific evidence," the trial court's "admission of the challenged evidence was harmless." 238 Or App at 162. Specifically, we reasoned that "[the] defendant never posited that anyone other than [the] defendant himself caused the physical injuries * * * at issue in the indictment" and that,

"[a]t the heart of this case was the parties' disagreement about [the] defendant's mental state when he injured [the victim] on the date in question. In contrast, the challenged evidence went to a part of the case that was not meaningfully at issue, namely, [the] defendant's role as the causal agent of those injuries."

*Id.* at 170.

In *Sanchez-Alfonso*, unlike in this case, the physical evidence of abuse—including evidence that the victim suffered a skull fracture—was patent, and the defendant did not dispute that physical injuries occurred or that he was the causal agent. *Id.* at 162, 170. By contrast, in this case, there were no diagnostic physical findings of abuse. Rather, as

noted, defendant's position was that, *if* the alleged conduct occurred, his other personality, "Josh," was responsible for it.

Further, to the extent that the state contends that the diagnosis was merely cumulative of the testimony of lay witnesses that defendant had engaged in the unlawful conduct, we disagree. The physician's medical diagnosis was "qualitatively different than the [other] evidence that the jury heard." *Davis*, 336 Or at 34. As the court noted in *Southard*, such a diagnosis comes from a "credentialed expert, surrounded with the hallmarks of the scientific method." 347 Or at 140. *See id.* at 141 (noting the "substantial risk that the jury may be overly impressed or prejudiced by a perhaps misplaced aura of reliability or validity of the evidence" (internal quotation marks omitted)).

In sum, we cannot say that there was "little likelihood" that the erroneously admitted diagnosis affected the verdict given the scientific nature of the diagnosis and its relationship to a disputed element of the charged crimes—that is, whether defendant actually engaged in the unlawful conduct. Accordingly, the admission of the diagnosis was not harmless and we must reverse defendant's convictions.[2]

Reversed and remanded.

---

[2] Our disposition in that regard obviates the need to address defendant's second assignment of error concerning the trial court's admission of the physician's nondiagnostic physical findings.